[597 NYS2d 962]

WARREN FRISCH, Respondent, v BELLMARC MANAGEMENT, INC., et al., Respondents, and BOARD OF MANAGERS OF THE COOPER SQUARE CONDOMINIUM, Appellant.

First Department, May 20, 1993

APPEARANCES OF COUNSEL

*Steven E. Rosenfeld* of counsel, New York City *(Ira E. Garr* with him on the brief; *Stein, Garr & Rosenfeld,* attorneys), for appellant.

*Joseph Milano* of counsel, New York City *(Stuart Abrams* with him on the brief; *Finkelstein Bruckman Wohl Most & Rothman,* attorneys), for Warren Frisch, respondent.

*John P. Donohoe* of counsel, New York City *(Phillips, Lytle, Hitchcock, Blaine & Huber,* attorneys), for The Southern New York Chapter of the Community Associations Institute, *amicus curiae.*

*Stuart M. Saft* of counsel, New York City *(Wolf, Haldenstein, Adler, Freeman & Herz,* attorneys), for Council of New York Cooperatives, *amicus curiae.*

## OPINION OF THE COURT

Ross, J.

The only issue presented on this appeal is whether Real Property Law § 235-b, the statutory warranty of habitability, is applicable to the relationship between the board of managers of a condominium and an individual unit owner. It is clear that tenant-shareholders in a cooperative can rely on section

235-b in actions against the cooperative corporation *(see generally, Department of Hous. Preservation & Dev. v Sartor,* 109 AD2d 665; *also see, Caspi v Madison 79 Assocs.,* 85 AD2d 583; *Suarez v Rivercross Tenants' Corp.,* 107 Misc 2d 135). However, we are informed that this is the first time the issue of whether the statutory warranty of habitability applies as between a unit owner and a board of managers has been considered by an appellate Court in this State. Since condominium ownership is a form of fee ownership of property, and not a leasehold interest involving a landlord-tenant relationship, we hold that Real Property Law § 235-b does not apply to condominiums and, accordingly, reverse the order of Supreme Court, New York County, insofar as appealed from.

The facts of this case are not disputed. Plaintiff is the owner of Unit 6B at the Cooper Square Condominium located at 63-69 Cooper Square, in Manhattan, having purchased the unit in March of 1986. The condominium contains 36 residential units and one commercial unit. The plaintiff does not reside in the unit and has leased the unit to residential tenants since its purchase.

In the fall of 1988 the plaintiff informed the defendant-appellant Board of Managers that his tenant had complained of water leaks in the unit. Other unit owners also complained of leakage problems. Consequently, the defendant-appellant retained engineers in order to locate the source of the leaks and then had substantial work done to remedy the problems. The main roof of the building was replaced and the sixth-floor terraces of the building were repaired. However, while the leaks were abated somewhat, the water intrusion problems in some of the units were not completely remedied. According to the defendant-appellant, the leaks and other problems with the heating and water pipes in the building were traced to defective work done by the sponsor. Moreover, the defendant-appellant maintains that the water problems that remain are related to leaks on the terraces and balconies of several units.

It is noteworthy that the by-laws of the condominium provide that maintenance of and repairs to any unit and any common elements exclusive to the unit, whether structural or nonstructural, shall be made by the owner of the unit. The by-laws further provide that the terraces and balconies to which a unit has sole access as well as exterior windows, glass doors and doors opening to common elements are for the exclusive use of the unit owner and are to be maintained and repaired by the owner at his sole cost and expense.

The plaintiff-respondent began withholding common charges and assessments in or about November of 1988. In May of 1990 plaintiff-respondent commenced this action alleging causes of action against the defendant-appellant Board of Managers, the sponsor and its principals, the architects, the roofing contractors and the managing agents. While the major part of the complaint alleges claims based on construction deficiencies in the building, plaintiff's eighth cause of action alleges a claim for negligence and breach of fiduciary duty for failure to make the proper repairs to stop the leaks and water damage, against the Board of Managers and Bellmarc Management, Inc., the managing agent for the condominium. The defendant-appellant Board of Managers answered, asserted various affirmative defenses and counterclaimed for, *inter alia,* payment of the arrears in common charges and assessments with interest, pendente lite, as well as for costs and attorneys' fees.

On January 6, 1992, the defendant-appellant moved by order to show cause for partial summary judgment on its first counterclaim seeking arrears in common charges and assessments together with other sums accruing until the determination of the motion, payment of assessments and common charges pendente lite, all costs and expenses including attorneys' fees and, for summary judgment dismissing the complaint, as then amended, as against the individual Board members. On the return date of the motion, February 24, 1992, the matter was referred to Justice Carol Arber. However, on that date the parties entered into a "So Ordered" stipulation in which the plaintiff-respondent agreed to place all common charges and other assessments and charges due through February 15, 1992, which amounted to $19,810.68, in an escrow account with his attorney. It was also agreed that the plaintiff-respondent would deposit in escrow all charges assessed by the Board during the pendency of the motion with all sums to remain in escrow pending a further order of the court.

The hearing court thereafter denied the defendant-appellant's motion for partial summary judgment on its counterclaim for, *inter alia,* common charges and assessments. The IAS Court held that a landlord/tenant relationship exists between the individual condominium unit owner and the condominium board by virtue of the condominium agreement. The court equated condominium ownership with ownership of a cooperative and held that the warranty of habitability of

Real Property Law § 235-b is applicable to condominiums and directed that there be a hearing to determine whether the warranty of habitability had been breached by the defendant Board of Managers.

The condominium form of ownership is based on a bipartite scheme whereby participants own space purchased by them, as well as an undivided interest in the land, structures, and facilities held in common with all other owners in fee. Each individually owned space is designated as a "unit". Usually there is an agreement among the unit owners regulating the administration and maintenance of the property *(see generally, All Seasons Resorts v Abrams,* 68 NY2d 81, 91; Goldsmith, Practice Commentaries, McKinney's Cons Laws of NY, Book 49, Real Property Law art 9-B [Condominium Act]). "A person having a cooperative interest in real estate *(e.g.,* a tenant-shareholder in a cooperative apartment) typically owns stock in a cooperative corporation and has a 'proprietary' leasehold granted by the corporation [citations omitted]" *(All Seasons Resorts v Abrams, supra,* at 90). The cooperative corporation is the sole owner of the land, structures and facilities, while the individual shareholder through the proprietary lease receives the right to occupy the space in the premises to which his or her shares are allocated *(All Seasons Resorts v Abrams, supra; Chemical Bank v 635 Park Ave. Corp.,* 155 Misc 2d 433; 4 Powell, Real Property § 633.11).

While some superficial aspects of condominium and cooperative ownership are similar (e.g., the payment of monthly charges for the maintenance of common areas), the two forms of interest in real property are fundamentally different by design and as a matter of law. This is demonstrated by the case law and commentaries cited *supra,* and by article 9-B of the Real Property Law which is entitled the Condominium Act (Real Property Law §§ 339-d—339-ii).

Real Property Law § 339-g provides that "[e]ach unit, together with its common interest, shall for all purposes constitute real property". Section 339-h provides that "[e]ach unit owner shall be entitled to the exclusive ownership and possession of his [or her] unit". Section 339-y (1) (a) provides that each unit and its common interest, not including any personal property, is deemed to be a parcel subject to separate taxation and assessment. "However, neither the building, the property nor any of the common elements is deemed to be a parcel." (Goldsmith, Practice Commentaries, *op. cit.,* at 559.) Section 339-r provides that at the time of the first conveyance of each

unit any blanket mortgages or other blanket liens affecting the unit are to be satisfied. Section 339-i characterizes the unit owner's interest in the areas of the land, structures and facilities held in common with all other owners as "appurtenant" to said owner's unit. Finally, condominium units are conveyed by recorded deeds *(see,* Real Property Law § 339-0) whereas in the case of a cooperative, the shares in the corporation and corresponding proprietary lease are conveyed.

Real Property Law § 235-b (1) provides in pertinent part that: "In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. When any such condition has been caused by the misconduct of the tenant or lessee or persons under his *[sic]* direction or control, it shall not constitute a breach of such covenants and warranties."

By its terms Real Property Law § 235-b applies to written or oral leases or rental agreements involving landlord-tenant relationships. While the trend in case law has been toward wider application of the section's protection to all tenants *(Department of Hous. Preservation & Dev. v Sartor,* 109 AD2d 665, 666, *supra),* there has not been any indication that the section is at all applicable to forms of ownership where the ownership interest of the individual seeking to invoke the protection afforded by the statute is in fee. Furthermore, we find that neither the statute itself nor its legislative history even remotely suggest that its provisions apply to the fee interest in real property, which is the distinguishing characteristic of condominium ownership.

The IAS Court misinterprets this Court's statement in *Department of Hous. Preservation & Dev. v Sartor (supra,* at 666-667) regarding the broad application of section 235-b. This Court stated that "[i]t is clear from the unequivocal language of the statute, and the broad application of its protective mantle by the cases which have applied it, that section 235-b applies not only to residential tenants but also to all *persons and entities as 'landlords'* " *(supra,* at 666-667 [emphasis added]). In its decision the IAS Court added the word "acting" to the italicized language so that the statement read "section

235-b applies not only to residential tenants but also to all persons and entities *acting as 'landlords' "* (emphasis added). This Court in no way intended the meaning that the IAS Court ascribes to the statement, i.e., that Real Property Law § 235-b includes all persons and entities who appear to "act" as a landlord even though there is no lease or landlord-tenant relationship. In any event, even the statement as set out by the IAS Court could not support the conclusion reached at IAS. It is clear that a condominium board of managers is not to be viewed to act as a landlord.

The above discussion demonstrates that as pointed out in Goldsmith's 1992 Supplementary Practice Commentary to article 9-B of the Real Property Law (McKinney's Cons Law of NY, Book 49, 1993 Pocket Part, at 51) one would be "hard pressed to find a landlord-tenant relationship between a condominium unit owner and the condominium board of managers * * * [T]he absence of this relationship has often been used as a basis for distinguishing condominiums from other forms of ownership such as cooperatives [citations omitted]." *(See, e.g., People v Board of Mgrs. of New City Condominiums,* 123 Misc 2d 188; *Board of Mgrs. of First Ave. Condominium v Shandel,* 143 Misc 2d 1084.) Therefore, we hold that the warranty of habitability of Real Property Law § 235-b does not apply to an individual unit within a condominium. An individual unit owner, such as the plaintiff, cannot withhold payment of common charges and assessments in derogation of the by-laws of the condominium based on defective conditions in his unit or in the common areas *(see, Board of Mgrs. of First Ave. Condominium v Shandel, supra;* Real Property Law §§ 339-j, 339-x), or based on his disagreement with actions lawfully taken by the Board of Managers. It has been held that "where a challenge is made by an individual owner to an action of a condominium board of managers, * * * absent claims of fraud, self-dealing, unconscionability or other misconduct, the court should apply the business judgment rule and should limit its inquiry to whether the action was authorized and whether it was taken in good faith and in furtherance of the legitimate interests of the condominium" *(Schoninger v Yardarm Beach Homeowners' Assn.,* 134 AD2d 1, 10). Plaintiff's claims against the defendant-appellant are thus limited and cannot be based on a breach of the statutory warranty of habitability in any event. We find no merit to plaintiff's argument that the approval by the defendant Board of Managers of plaintiff's leasing of his unit makes section 235-b applicable to the

plaintiff's relationship with the Board. The only landlord in this action is the plaintiff himself. While plaintiff's tenant may rely on section 235-b as against plaintiff, plaintiff may not transfer his liability to his tenant to the Board of Managers by withholding common charges based on section 235-b.

Furthermore, even if a landlord-tenant relationship could be found between the defendant-appellant Board and the plaintiff and we unequivocally hold that it could not, plaintiff could not avail himself of the protection of the statutory warranty of habitability since he did not personally reside in the unit (see, Halkedis v Two E. End Ave. Apt. Corp., 161 AD2d 281, lv denied 76 NY2d 711) and cannot dispute that he purchased the condominium as a real estate investment without any intent of ever occupying it.

■ Finally, we note that the by-laws of the condominium (art V, § 6) provide that the Board is entitled to recover attorneys' fees from any unit owner who defaults in paying common charges incurred by the Board of Managers in any proceeding brought to collect said unpaid common charges. While the defendant-appellant Board agreed to allow plaintiff to pay common charges into escrow in a stipulation "So Ordered" on February 24, 1992, we find that the defendant-appellant Board is entitled to reasonable attorneys' fees which are referable to its efforts to collect unpaid common charges and assessments. Consequently, a hearing should be held by the IAS Court to determine the amount of defendant-appellant's attorneys' fees that are so referable.

Accordingly, that part of the order of Supreme Court, New York County (Carol H. Arber, J.), entered on or about August 18, 1992, appealed from, which denied that portion of the defendant-appellant Board of Managers' motion for partial summary judgment pursuant to CPLR 3212 (e) as to its first counterclaim for arrears in common charges and assessments, is unanimously reversed, on the law, with costs, and the motion is hereby granted and the matter of defendant-appellant's request for attorneys' fees is referred back to the IAS Court for further proceedings consistent with this decision.

MILONAS, J. P., ROSENBERGER and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on or about August 18, 1992, insofar as it denied that portion of defendant-appellant's motion for partial summary judgment pursuant to CPLR 3212 (e) as to its first counterclaim for arrears in common charges and assessments, unanimously

reversed, on the law, with costs, and the motion granted and the matter of defendant-appellant's request for attorneys' fees is referred back to the IAS Court for further proceedings consistent with the opinion of this Court.