OPINION OF THE COURT
Cyril K. Bedford, J.
This summary nonpayment of rent proceeding was commenced by the residential cooperative corporation, 87-37 Bay Owners Corp., against the proprietary lessee, Ronald James D’Angelo (Respondent), seeking unpaid maintenance and additional maintenance claimed due for the residential premises 87-37 Bay Parkway, apartment B-63, Brooklyn, New York (Premises). Respondent served an answer to the petition but did not appear on the scheduled court date and a default judgment was entered. Respondent subsequently moved to vacate the default. That motion was granted by decision and order dated October 25, 1999 wherein the default was vacated, a trial was scheduled and later conducted.[1]
The court finds the outstanding maintenance and additional maintenance due through October 31, 1999 to be the sum of $11,764.17. Respondent alleges petitioner has breached the warranty of habitability and seeks an abatement of rent. Petitioner opposes such and states Respondent cannot be awarded any abatement based upon the fact that respondent has not been in possession of the Premises during the period in question. At trial it was adduced that in the context of a 1997 divorce proceeding between Respondent and Respondent’s wife,[2] Respondent was excluded from the Premises pursuant to court order. That order allowed Respondent’s wife to live in the Premises pending the final outcome of the divorce proceeding. Respondent has continued to be responsible for the payment of maintenance for the Premises.
After examination of the relevant cases, including those cited in petitioner’s posttrial submission which petitioner claims stand for the proposition that Respondent is not entitled to an abatement, this court finds under the facts and circumstances of this proceeding Respondent is entitled to make a claim for an abatement. The common thread throughout the cited cases is the court’s aversion to tenants seeking to profit from a stat *560 ute (Real Property Law § 235-b) which was intended to be salutary and remedial. The statute was not intended to be a vehicle by which purchasing tenants of cooperatives holding vacant apartments could reduce their maintenance or receive a windfall by collecting the full rent from their subtenants and then receive an abatement in maintenance.
In the lead case, Halkedis v Two E. End Ave. Apt. Corp. (161 AD2d 281 [1st Dept 1990]), the Court held that the plaintiffs could not avail themselves of the protection of the warranty of habitability because they never made a bona fide attempt to live on the premises. In Frisch v Bellmarc Mgt. (190 AD2d 383 [1st Dept 1993]), the Court held the plaintiff could not avail himself of the statutory warranty of habitability since he did not personally reside in the unit (citing Halkedis v Two E. End Ave. Apt. Corp., supra) and had purchased same as a real estate investment without any intent of ever occupying it. In 25 W. 13th St. Corp. v Gerevitz (128 Misc 2d 74 [Civ Ct, NY County 1985]), petitioner (the cooperative) sued respondents (proprietary leaseholders) for maintenance. Respondents had sublet their apartments. The occupants (the subtenants) did not appear or make any claim under the warranty of habitability. Respondents admitted that the subtenants had continued to pay their rent in full. Under those circumstances, the court felt it would constitute a windfall for respondents to collect their rent in full and at the same time receive an abatement of their maintenance. The court dismissed their claim for breach of warranty of habitability. The court specifically noted it made no decision regarding the situation where an occupant is a party, but not the tenant or lessee. In Clinton Hill Apt. Owners v Gooden (NYLJ, June 26, 1992, at 24, col 6 [App Term, 2d Dept]), the court held there was no basis to grant an abatement to a proprietary leaseholder who was not in possession and occupying the apartment as a tenant during the period of time in question, citing Halkedis and 25 W. 13th St. Corp. (supra). In 142 E. 16 Coop. Owners v Jacobson (NYLJ, June 5, 1998, at 29, col 3 [App Term, 1st Dept]), the court held the tenant’s defense/counterclaim for breach of the warranty of habitability did not lie where he did not reside in the cooperative apartment since 1989 and the premises had been vacant and for sale since departure of the subtenant at the expiration of the sublease, citing Halkedis and Frisch (supra).
In the case before the court, tenant was previously occupying the Premises but was forced to vacate due to a court order excluding him from the Premises. The Premises continued to *561 be occupied by his wife. The wife is named in this proceeding and testified at trial regarding the conditions in the Premises. To preclude Respondent from making a claim for an abatement under the facts of this case does as much offense to the purpose and intent of the warranty of habitability statute as to have granted an abatement in the above-cited cases. As much as it would have been a windfall for the tenants in the above-cited cases to have received an abatement, it would be a windfall to petitioner here to deny Respondent an abatement. Assume arguendo that the divorce proceeding continues for another year, is Respondent to be left without a remedy regarding the breach of warranty of habitability defense and relegated to paying his full maintenance without recourse notwithstanding the conditions in the apartment? This would leave Respondent without a remedy as his wife who is residing in the apartment would not have the right to assert the breach of warranty as she is not the tenant of record (see, Westway Plaza Assocs. v Doe, 179 AD2d 408 [1st Dept 1992]). What of a situation where a family resides in an apartment and a husband/wife is the only named tenant of record and he/she is called away on business for a few months or called to active military duty for a period of time? If there is a lack of heat or hot water or other condition(s) while the husband/wife was away, would it not be unjust to say he/she must pay the full rent for the period he/she was not in the apartment — notwithstanding the fact that his/her family occupied the premises and had suffered due to the landlord’s breach of the warranty of habitability? To adopt an absolute rule that holds that while a tenant of record is not occupying the apartment he/she is not entitled to an abatement no matter what the circumstances is an open invitation to unscrupulous landlords/lessors to disregard obligations and responsibilities knowing they will not be accountable for any breach of warranty of habitability. The court cannot condone such an absolute rule and does distinguish this set of facts from those cases cited above. Just as the amount of an abatement is fact specific, whether the right to claim an abatement when the tenant of record is not actually occupying the apartment should be fact specific.
Determining the amount of any abatement due to Respondent requires review of another landlord/tenant proceeding between the parties under L&T index No. 100999/1996. That proceeding, where each party was represented by counsel, came to be settled by a stipulation of settlement dated June 12, 1997 (Stipulation). The Stipulation in relevant part granted Respon *562 dent an initial abatement in the sum of 35% of the arrears then due (plus the sum of $489.72) for the period through June 30, 1997. The balance due of $11,000 was deposited into an escrow account and the fund was to be used to accomplish the repairs as specifically set forth in the Stipulation. Respondent was also granted a continuing abatement in the sum of 35% of the maintenance from July 1, 1997 through the completion of all work both exterior and interior contemplated by the Stipulation.
It is conceded by the parties that petitioner thereafter made a motion to release the escrow account based upon its allegation that the repairs required by the Stipulation were complete. The motion was granted on default of Respondent by order dated March 23, 1999 (Finkelstein, J.). Subsequently, it appears from the record before this court, petitioner sought judgment for additional amounts it claimed became due during the course of the Stipulation and Respondent sought additional relief regarding repairs. By order dated May 21, 1999, petitioner’s motion was denied as the court opined that the proceeding would not be kept open forever and deemed the matter closed. Respondent’s motion was denied without prejudice to Respondent instituting a plenary action or otherwise asserting his right to obtain appropriate repairs.
The issue for this court to resolve is what period, if any, is Respondent entitled to an abatement. Respondent argues that the 35% abatement should continue from the date of the escrow release to the date of the trial, based upon his allegation that the repairs were never completed in spite of the court’s March 23, 1999 order. The court finds the potential abatement period is from May 21, 1999 which is the date Respondent notified petitioner of repair.[3] This constituted the first notice of Respondent’s complaint after the date of the release of the escrow fund. To find that the release of the escrow fund did nothing more than to release the fund would reward Respondent for defaulting on that motion. Judge Finkelstein’s order of March 23, 1999 is collateral estoppel on the issue that the repairs required by the Stipulation were completed.
The credible testimony at trial showed that there were six violations found by the court inspector. Each condition was repaired by petitioner except the inoperable upper sash southwest window northwest room (violation No. 6). Testimony *563 revealed that violation Nos. 1 through 5 were completed. The court finds that petitioner was diligent in correcting these conditions. Respondent’s concern that violation Nos. 4 (repair plaster walls and ceilings closet northwest room) and 5 (leaky flush connector in water closet) will reoccur, while perhaps well founded, is not a proper basis to award a greater abatement. A showing of code violations does not necessarily constitute automatic breach of the warranty. Once a code violation has been shown, Respondent must come forward with evidence concerning the extensiveness of the breach, the manner in which it impacted upon health, safety and welfare, and the measures taken by the landlord to alleviate the violation. (Park W. Mgt. Corp. v Mitchell, 47 NY2d 316 [1979].) The court finds that Respondent came up short on demonstrating how these conditions interfered with the use of the Premises or how the conditions impacted on Respondent’s life, health or safety. Accordingly, Respondent is granted an abatement in the amount of $1,000. Petitioner is granted a final judgment in the sum of $10,764.17. Issuance of a warrant is stayed five days.
The court has considered the balance of the parties’ claims and finds them to be of no merit.

. Tape No. 3042 counter No. 3851 to end; tape No. 3044 counter No. 0 to 531 continued 698 to 1253; tape No. 3045 counter No. 386 to 2340 continued 2642 to 5048.

. Respondent’s wife, Barbara D’Angelo, is named as respondent undertenant in this proceeding.

. The actual date of Respondent’s motion is not before the court, and the court adopts the date of the order as the date of notice.